United States District Court
for the Northern District of Texas
San Angelo Division

August 20, 2024
Romelia Flores # 83652408
BOP - FCI Waseca - Place of Confinement
Criminal Case No: 6:17 CR - 00042

FILED - USDC - NDTX - SA
AUG 27 '24 PM 2:05

I would like to file a Compassionate Release/Reduction. I was sentenced and sent to FCI Dublin where I was a victim of Sexual Abuse. I filed all my administrative Remedies (see attached) as well as Compassionate Release/Reduction to the Warden of FCI-Dublin/Special Master Mrs Still while I was still at FCI Dublin. The request was sent via certified mail and email from my then attorney Alane Ortega on April 18, 2024 (see attached). It has been well over 30 days and I have not received a response. I believe that extraordinary and compelling reasons, specifically being a victim at the hands of BOP Staff warrant a Compassionate Release/Reduction.

Romelia Flores

Romelia Flores

To: United States District Court Sentencing Judge
Re: Compassionate Release Applications from the AICs Previously Incarcerated at FCI Dublin

This Court currently presides over a class action for injunctive relief brought on behalf of adults in custody ("AICs") formerly incarcerated at Federal Correctional Institution ("FCI"), Dublin and the satellite camp.

While the Bureau of Prisons ("BOP") has elected to close FCI Dublin, and, thus, its population has been dispersed throughout the country, members of the class remain under the protection of this Court pursuant to a preliminary injunction issued on March 15, 2024.[1] This document provides a brief summary of the events at FCI Dublin which you may wish to consider to the extent applicable to the particular case of any compassionate release applications you receive from class members.

In short, I have sentenced six FCI Dublin correctional officers for criminal sexual abuse and criminal sexual contact, two after jury verdicts. One remains under indictment and, I believe, over a dozen others remain under investigation. In January 2024, I presided over a week-long evidentiary hearing with respect to a civil suit and conducted an unannounced, nine-hour site visit preliminarily finding that the AIC population at FCI Dublin had limited to no access to constitutionally adequate medical and mental health care, programming, and timely administrative relief. Thus, the time at FCI Dublin was likely "harder time" than other institutions. Programming was effectively non-existent. To accommodate staff, the "day" began at 6:00 a.m. and ended at 2:00 p.m. After that, they were in lock down but could not congregate for any reason including prayer groups or counseling. In a 45-page preliminary injunction order, I noted that FCI Dublin "…deter[red] inmates from filing administrative grievances by threatening [the AICs] with citations on their record, the loss of good time credits and better paying jobs, and placement in the SHU [Special Housing Unit] for doing so."[2]

For a period, some AICs were placed in the SHU for reporting the criminal misconduct of correctional officers for weeks at a time. The BOP was fully aware of the issue with two internal assessments. Yet, it "proceeded sluggishly with intentional disregard" and the decision to repeatedly install "BOP leadership who fail to grasp and address the situation strains credulity."[3]

By way of further background, the situation began to unravel in June of 2021 when a whistleblower complaint sparked a Department of Justice ("DOJ") investigation and an officer was criminally charged. This investigation led to the above-referenced sentences. Many AICs have been the subject of staff sexual abuse, harassment, and retaliation by staff seeking to cover up their own misconduct. Remarkably, despite all the criminal activity, BOP provided the victims with little, to no, mental health counseling.

The DOJ's investigation is ongoing. About a month prior to its closure, the FBI executed a search warrant at the facility and walked off, again, the warden and other senior leadership officers.

No AICs remain in FCI Dublin as of May 1, 2024. I anticipate that, after reaching their new destinations, some may submit requests for compassionate release to their sentencing judges, asking for leniency given the abuses they may have endured. The information herein is provided in the event that you find it useful to your decision-making process. Feel free to contact me should you have any questions.

Yvonne Gonzalez Rogers
United States District Court Judge for the Northern District of California

---

[1] *See California Coal. for Women Prisoners v. United States,* No. 4:23-CV-4155-YGR, 2024 WL 1290766 (N.D. Cal. Mar. 15, 2024).
[2] *Id.* at 43.
[3] *Id.* at 1.

**Alane M. Ortega**
AZ Bar #025719
alane@ortegalawyers.com



**Daniel R. Ortega III**
AZ Bar #029444
daniel@ortegalawyers.com

April 18, 2024

Special Master
Wendy Still
SENT VIA Email: still4@aol.com

Nancy T. McKinney
Warden
5701 8th St
Dublin, CA 9456
**Via: Certified Mail**

RE:   Romelia Flores

Dear Special Master Still and Warden McKinney,

I represent Ms. Romelia Flores an inmate at the FCI Dublin which will be closing this week as a result of the attached Judicial Order. (See Attachment A: 04/15/2024 Judicial Order). Pursuant to this Order the closure is related to Bureau of Prisons ("BOP"), "significant inadequacies," and requires that the BOP, "shall update casework . . . including classification and release dates. . . to ensure inmates are transferred to the location. This includes whether an inmate should be released to a BOP facility, home confinement, or halfway house, or granted compassionate release." (*Id*.). Judge Gonzalez Rogers Order further requires that all case reviews and transfers ***shall*** be reviewed with the Special Master ***prior*** to transfer. My understanding is that Ms. Still has been assigned as that Special Master.

While I understand you are likely under a significant amount of pressure to complete these reviews in what I believe to be an unreasonably amount of time, I am asking that you please consider (1) significant mitigating information for compassionate release sentence reduction for Ms. Flores and (2) inaccuracies in Ms. Flores' classification which has caused her to not only be classified at a higher risk level but an impending movement to an incorrect BOP Institution.

### 1. Circumstances Supporting a Compassionate Release Consideration/Reduction

Ms. Flores is a victim of the "significant inadequacies" plaguing BOP Dublin Unit. Specifically, Ms. Flores was a victim of sexual assault at the hands employee(s) of the BOP. Between October 2019 and January 2023, and under the auspices of receiving medical care from BOP staff, she was forced to engage in embarrassing sexually motivated acts that had nothing to actually do with care. (See Attachment B:06/08/2023 NOC). As stated in her notice of claim the overall staff at Dublin allowed, facilitated, and at times encouraged her victimization. I will not belabor the details of the various sexual improprieties and inhumane living conditions found at FCI Dublin.
Ms. Flores would like you to consider her victimization at the hands of the facility that was charged with ensuring her safety while she carried out her sentence as a basis for compassionate release

reduction. No person under the custody. Control, and care of the United States Government should be subjected to such inhumane treatment.

This is especially true for women in a low security setting. These are not high risk, dangerous individuals who are creating their own circumstances which put their safety at jeopardy. These are women housed in a federal correction facility who are simply trying to do their time and go home. This is likely why they were so easy to prey upon. The BOP facility culture is inexcusable and cannot be tolerated Ms. Flores victimization at the hands of her captures rises to the level of an extraordinary and compelling reason to consider a compassionate release/reduction in sentence.

### 2. Inaccuracies in Classification Supporting Reconsideration and Adjustment

Ms. Flores was told during her recent classification that she currently has a Management Variable preventing her from lower classification consideration until January 2025 due to the need for greater security. My client is very confused about this claim, because as you can see from my Client's record, she has had no infractions for fighting, contraband, or discipline. She is actually at the lowest level as a result of her lack of disciplinary record.

My client is a model prisoner for the BOP. Not only does she work as an orderly for the unit she also is a suicide companion, assisting other women in the prison with the emotional turmoil they are experiencing and preventing acts of self-harm and suicide. My client has shown through her behavior and commitment to her rehabilitation that she intends to make the BOP she is housed at a better place for all. This includes the guards and employees therein. When the prisoners are getting the support services, they need they are less likely to cause issues, to include safety issues, for the staff charged with maintaining order.

Ms. Flores was also told that she would be transferred, "far away" as a result of her classification. This is equally concerning as Ms. Flores has an entire family network of support her in Arizona, located near the Dublin facility. Her two daughters live here, as do their children. My client has never had the opportunity to be a grandmother in the traditional sense as she has been housed in BOP since their birth.

She missed her daughter's graduation from high school and college and Master's Degree. As a result of her conduct long ago (for which she took responsibility for) she has lost some of the most crucial and priceless moments in her children and her grandchildren's life. This is a fact that she will never escape and never forgive herself for. While this is not BOP's fault, claiming that she is high-risk preventing her from transfer to a comparable facility is simply an inaccurate assessment.

That being said, I am sure that Judge Gonzalez Rogers did not intend for this order to further victimize Ms. Flores through tearing her from the limited family contact she can have. Moving her "far away "will deprive her of the ability to have frequent visits with her family causing them to lose contact. This divests her of her support system needed to continue to be a model prisoner for the BOP. It is a known fact that prisoners who are released with significant family support see marked reduction in recidivism. It was not Ms. Flores fault that she was sexually assaulted by BOP staff. Why should she be sent, "far away" from her family and home as a result of their conduct.

### 3. Notice of request for invocation of 18 U.S.C. §3582(c)(1)(A)(i)

Thank you for your attention to this important matter. I can make myself available for further questions.

Respectfully,

*Alane Ortega*

Alane M. Ortega
Attorney for Romelia Flores